UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| B. NAGEL FILMS, LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>NETFLIX, INC., and<br>LUMINANT MEDIA, INC.,<br><br>        Defendants. | Case No.<br><br><br>Civil Action<br><br>COMPLAINT AND JURY DEMAND |

Plaintiff, B. Nagel Films, LLC ("Nagel Films" or "Plaintiff"), through his undersigned attorneys, by way of Complaint against Defendants, Luminant Media, Inc., ("Luminant Media") and Netflix, Inc., ("Netflix") (collectively, Luminant Media and Netflix are referred to as "Defendants") alleges as follows:

**NATURE OF THIS ACTION**

1. This is a copyright infringement action arising under the Copyright Act of 1976, wherein Plaintiff is seeking damages, attorney's fees, injunctive relief, and costs to redress the infringement of Plaintiff's original work, *Boy Scout's Honor*, a documentary film that Plaintiff wrote, properly copyrighted, and produced.

2. *Boy Scout's Honor* contains Plaintiff's unique expression of facts surrounding the stories of both individual victims, and the widespread pervasiveness of childhood sexual abuse in the Boy

Scouts of America ("BSA").

3. *Scout's Honor: The Secret Files of the Boy Scouts of America* ("Defendants' Documentary") is a documentary produced by Defendants also about childhood sexual abuse in the BSA that is substantially similar to *Boy Scout's Honor* as it appropriated themes, structure, mood, dialogue, visual style, and arrangement from Plaintiff's work.

4. Defendants' Documentary was released approximately 9 months after *Boy Scout's Honor* and features overt examples of copying that are apparent at even a cursory glance. The titles of the documentaries are virtually identical, as are their length, topics, and overall style. Analysis of the two documentaries reveals concrete examples of Defendants' Documentary copying protectable elements of *Boy Scout's Honor's* expression as demonstrated by the Defendants' Documentary's infringing use of mood, tone, dialogue, structure, and other expressive artistic elements.

## THE PARTIES

5. Nagel Films is a production company, with its principal place of business located at 103 Eisenhower Parkway, Roseland, New Jersey.

6. Luminant Media is a production company located at 453 South Spring Street, Suite 1216, Los Angeles, California.

7. Netflix is a Delaware corporation registered to do

business in New Jersey as a foreign for profit corporation, located at 100 Winchester Circle, Los Gatos, California. Netflix sells monthly subscriptions to its customers, and broadcasts various forms of media and television to those customers over the internet to computers, tablets, mobile phones, and other internet-capable devices.

## JURISDICTION AND VENUE

8. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338. Federal question jurisdiction arises under and pursuant to the Copyright Act of 1976, 17 U.S.C. §§ 101, *et seq.*

9. The Court has personal jurisdiction over Netflix because it is registered to do business in New Jersey and can be served with process through its registered agent, CT Corporation System, 820 Bear Tavern Road, West Trenton, NJ. Additionally, Netflix conducts substantial business in New Jersey and has purposefully availed itself of the benefits and protections of the District of New Jersey by continuously and systemically conducting substantial business in this judicial district. More specifically, Netflix has caused injury to Plaintiff in New Jersey; is the "Studio Partner" of New Jersey in conjunction with its present efforts to develop the former Fort Monmouth site as a production studio; has millions of subscribers in New Jersey; directs advertising to New Jersey; and has systemic and continuous contacts with New Jersey.

10. The Court has personal jurisdiction over Luminant Media because of its production of content exclusively for Netflix. Luminant Media has an agency or partnership relationship with Netflix so much so that by virtue of this relationship, it has availed itself of the benefits and protections of the District of New Jersey by continuously and systemically conducting substantial business in this judicial district. More specifically, Luminant Media has caused injury to Plaintiff in New Jersey; has targeted and copied copyrightable elements of Plaintiff's work wherein Plaintiff is based in New Jersey; directs advertising and promotion for Defendants' Documentary to New Jersey; and has systemic and continuous contacts with New Jersey.

11. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 1400(a) insofar as a substantial portion of the events, acts and omissions giving rise to this claim occurred and Defendants and/or their agents reside or may be found in this judicial district.

**FACTUAL BACKGROUND**

**A. Plaintiff's Copyright of *Boy Scouts Honor***

12. Plaintiff produced a documentary titled *Boy Scout's Honor*, which explored the instances of childhood sexual abuse in the BSA over decades.

13. Plaintiff filed an application for copyright registration of *Boy Scout's Honor* with the United States Copyright

4

Office and a Registration (No. PA 2-377-218) was issued effective as of September 18, 2022. A true and correct copy of said Registration is attached hereto as Exhibit "A" and incorporated herein by reference.

14. Plaintiff's application was approved and, since September 18, 2022, Plaintiff has been the sole and exclusive producer and creator of the documentary *Boy Scout's Honor* (hereinafter, "Nagel's Documentary").

### B. Access to Nagel's Documentary

15. Nagel's Documentary was released on December 13, 2022 on multiple streaming platforms including Apple, Amazon Prime Video, and Vudu.

16. Defendants' Documentary was released on September 6, 2023 exclusively on Netflix's streaming platform.

17. Defendants had access to Nagel's Documentary during the creation of Defendants' Documentary as it was available to the public for almost 9 months prior to the release of Defendants' Documentary.

### C. Defendants' Acts of Infringement

18. Defendants' Documentary directly infringes Plaintiff's copyright in Nagel's Documentary as it copied several copyrightable portions and elements of Nagel's Documentary without permission or authority.

19. Defendants' Documentary's copying can be demonstrated as

5

the two works are substantially similar both on a broad and granular level.

20. Defendants intentionally copied Nagel's Documentary in creating Defendants' Documentary. The copied elements can be viewed in an overarching way relating to theme and structure, including, but not limited to, the following examples:

| Nagel's Documentary's Copyrighted Work | Infringing Elements in Defendants' Documentary |
|---|---|
| **OVERARCHING THEME AND STRUCTURE** ||
| An exploration of child sex abuse perpetuated by Scout Masters and others in the BSA and the organization's efforts to conceal the widespread nature of this abuse from the public. This theme is explored and developed through interviews of attorneys and experts along with victims of the abuse and their families. | An identical theme and method of exploration is employed by Defendants. As described in the films overview: "Survivors, whistleblowers and experts recount the Boy Scouts of America's decades long cover-up of sexual abuse cases and its heartbreaking impact." (Netflix.com/title/81477233). |
| Title: *Boy Scout's Honor* | Title: *Scout's Honor* |
| Employs a combination of interviews, historical files, somber and/or unnerving background music, stock footage of camping and scouting activities to convey the contrast of the noble and wholesome nature of traditional associations with scouting against the pervasive and secretive abuse occurring beneath the wholesome surface. | Copies the overarching use of interviews, historical documents, musical accompaniment, and scouting stock footage to copy Nagel's Documentary's theme and methods to convey the mood to the viewer. |
| Length of 1 hour and 27 minutes. | Length of 1 hour and 31 minutes. |

6

| | |
|---|---|
| Focuses on an individual victim whose abuser, Bill Sheehan was responsible for abusing multiple other scouts to demonstrate both the individual impact of the abuse and the volume of individuals impacted by the abuser. | Highlights an individual victim whose abusers, Tom Woodall, Richard Halvorsen, Harry Cramer, and Lewis Sialle were responsible for abusing multiple other scouts from the surrounding area to copy Nagel's Documentary's demonstration of the individual impact of the abuse and the volume of individuals impacted by the abuser. |
| Opens with a scene featuring stock footage of camping activities with a central interviewee fondly recalling scouting activities. Closes with a scene featuring white letters over a black screen. | Opens with stock footage of near identical activities with a central interviewee similarly recalling pleasant scouting activities. Closes with an identical format of white letters over a black screen. |

21. Defendants intentionally copied the protected expression used in Nagel's Documentary in creating Defendants' Documentary. The copied elements can be demonstrated by analyzing specific scenes and their use of lighting, music, camera techniques, dialogue, and arrangement. Examples of improper and infringing copying can be found including, but not limited to, the following examples:

| **Nagel's Documentary's Copyrighted Work** | **Infringing Elements in Defendants' Documentary** |
|---|---|
| **OPENING SCENE** ||
| 0:01:48<br><br>Aaron Averheart ("Averheart"), a central interviewee, is | 0:01:51<br><br>Christopher Hayward, a central interviewee, is featured |

7

| | |
|---|---|
| featured describing the positive activities that he participated in while a boy scout. Averheart's voice is played over stock film of boy scouts participating in similar activities. | describing near identical activities over similar stock footage of boy scouts participating in these same activities. |
| 0:02:12<br><br>Footage of a campfire and roasted marshmallows plays as Averheart's voice over states: "we got to go camping. We got to build campfires and cook over open flames." | 0:01:56<br><br>Similar footage of a marshmallow roasting over a campfire plays as Hayward's voice over states: "pitching tents, making fires, cooking things on an open fire." |
| 0:02:33<br><br>The wholesome nature of scouting is abruptly ended by an expert discussing BSA's knowledge of molestation in the BSA. | 0:02:34<br><br>At almost the exact second into the opening, the wholesome portrayal of scouting is stopped in a similar abrupt fashion by a voiceover discussing the dirty secret of the BSA. |
| **EXPERTS DISCUSS FILES** ||
| 0:02:56<br><br>Brad Rice, attorney working on BSA abuse cases discusses the volume, detail, and substantial temporal length of the BSA's abuse records known as the perversion files.<br><br>Brad Rice is framed at a "half bust" subject using side or "chiaroscuro" lighting to bring out subtle skin textures, while set in an office with a lamp partially visible behind his head. | 0:10:01<br><br>Patrick Boyle, journalist who worked on uncovering sexual abuse in the BSA similarly discusses the quantity, historical reach and detail of the BSA's records on abuse.<br><br>Patrick Boyle is framed in an identical manner, and lit also using "chiaroscuro" lighting, similarly highlighting skin textures while Boyle's half bust sits in an office with a lamp behind him partially blocked by his head.<br><br>0:11:03 |

| | |
|---|---|
| 0:03:22<br><br>While discussing the large quantity of files on abuse maintained by the BSA, slightly out of focus hands are shown going through in focus files. | Slightly out of focus hands are similarly portrayed going through files while a voiceover similarly discusses the large volume of the BSA's abuse files. |
| **VICTIMS DESCRIBE VIVID SEXUAL ABUSE** ||
| 0:28:52<br><br>Averheart discusses graphic detail of some of the abuse. Specifically, Averheart shares a revolting memory where the abuser's legs were wrapped around Averheart's head and Averheart feared death in such a vulnerable, abusive and violent position.<br><br>The description of this event cuts between interview footage of the victim along with cutting to stock footage of the camp site and a nighttime image of the camp area. The audio for this segment features Averheart's voice talking while eerie atmospheric music softly plays in the backdrop. | 0:21:55<br><br>Douglas Kennedy, a sex abuse victim, details near identical sexual abuse. A strikingly similar act of rape is described, wherein the abuser wraps his legs around the victim's head, while nude and sexually abuses the victim.<br><br>The striking similar choice for the graphic detail of the sexual act is also portrayed by cutting between the interviewee talking along with similar stock footage of nature and the camp area. The audio is also similar as Kennedy's voice speaks over unnerving atmospheric music playing in the backdrop. |
| **CLOSING SCENE** ||
| 1:26:29<br><br>White letters appear over a black screen while dramatic music plays in the background. The letters fade as new information is presented relating to details of the BSA's bankruptcy declaration, settlement trust, and the uncertainty that these events leave with survivor's regarding | 1:31:50<br><br>In a near identical stylistic manner, white letters flash over a black screen while dramatic music plays. The words on the screen detail the same information regarding the bankruptcy settlement trust and its uncertain relation to survivor's compensation. |

9

| | |
|---|---|
| their claims against the organization. | |
| **PORTRAYL OF SERIAL ABUSERS** ||
| 0:05:30<br>Chilling and tense music plays as Averheart reveals the identity of a serial abuser named Bill Sheehan. The screen plays footage of Averheart in his present daily life, Averheart's interview, and stock footage of scouting activities. | 0:14:12<br>Music that is indistinguishable from the music used in Nagel's Documentary plays while Mark Eaton, a sex abuse victim, reveals the identity of serial abuser named Thomas Hacker. Like Nagel's Documentary, footage of Eaton in his present life, and interview plays as Eaton describes his introduction to the abuser. |

22. In sum, Defendants' Documentary reflects a wholesale copying of Nagel's Documentary. Defendants' Documentary does not just cover the same subject matter but appropriates and copies Nagel Films' unique expression of the subject, including selection of facts, arrangement, mood and theme choices, stylistic techniques, carefully selected dialogue, music selection, and other copyrightable elements resulting in a violation of Plaintiff's copyrighted work.

**D. Defendants' Direct, Contributory, and Vicarious Infringement**

23. Luminant produced Defendants' Documentary exclusively for Netflix.

24. Plaintiff alleges that Netflix knowingly induced, caused or materially contributed to the infringing production and is liable as a contributory infringer.

25. Netflix has and continues to, host, market, sell, and

10

broadcast the infringing Defendants' Documentary and has benefited financially from same.

26.  Upon information and belief, Plaintiff alleges that at all relevant times, Luminant Media was an agent, servant, partner and/or in a joint venture with Netflix acting withing the scope of said agency, partnership and/or joint venture.

27.  Upon information and belief, Netflix is liable for the infringing acts committed by Luminant Media to the extent that Netflix had the right and ability to control the infringing activities alleged and had a direct financial interest in such activity.

**COUNT ONE**
**Direct Copyright Infringement**
**(17 U.S.C. § 106 and 17 U.S.C. § 501 et. seq.)**

28.  Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 27 of the Complaint as though fully set forth herein.

29.  Plaintiff is now, and at all times relevant hereto, the sole proprietor of all right, title and interest in and to the copyright in the documentary, *Boy Scout's Honor*.

30.  Defendants have infringed and violated, and continue to infringe and violate, Plaintiff's copyright by copying significant portions of the copyrightable material in *Boy Scout's Honor* by creating, marketing, editing, and distributing the documentary, *Scout's Honor: The Secret Files of the Boy Scouts of America*.

31. Defendants have engaged in such copying without the consent, approval or license of Plaintiff.

32. Defendants' infringement of Plaintiff's exclusive rights to *Boy Scout's Honor* has been willful and deliberate and Defendants have profited from its infringement at the expense of Plaintiff.

33. As a direct and proximate result of Defendants' infringement of Plaintiff's exclusive copyright in *Boy Scouts Honor*, Plaintiff is entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504, in any such other amount as may found appropriate after trial.

## COUNT TWO
### Contributory Copyright Infringement
**(17 U.S.C. § 501)**

34. Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 33 of the Complaint as though fully set forth herein.

35. Defendants had access to Nagel's Documentary while producing Defendants' Documentary.

36. The documentaries are so substantially similar that Defendants' access to Nagel's Documentary should be presumed.

37. Defendants knew or had reason to know of the infringement of Nagel's Documentary. By producing and releasing Defendants' Documentary, and in addition to directly organizing and effectuating such infringing activities, Defendants each also induced, caused and materially contributed to infringing conduct

by each other.

38. Defendants undertook these actions both individually and jointly, and conspired and acted in concert with one another to accomplish the production and release of Defendants' Documentary, which they knew would violate and infringe Plaintiff's copyrights to Nagel's Documentary.

39. Defendants' infringing activities, as set in this complaint were deliberate, intentional, malicious, and willful.

40. Defendants, in addition to their liability for direct infringement of Plaintiff's copyright, are jointly and severally liable for contributory infringement of Plaintiff's copyrights to Nagel's Documentary.

## COUNT THREE
### Vicarious Copyright Infringement
**(17 U.S.C. § 501 et. seq.)**

41. Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 40 of the Complaint as though fully set forth herein.

42. In addition to committing the direct and contributory acts of infringement in producing and releasing Defendants' Documentary, Defendants supervised and facilitated the production and release of Defendants' Documentary and had the right to and ability to control it. Furthermore, Defendants had a direct financial interest in, and stood to gain a direct financial benefit from, the deliberate, malicious, and infringing activities.

43. As a result of Defendants' willful and deliberate conduct set forth above, Plaintiff has been, and will continue to be, damaged.

44. Defendants, in addition to their liability for direct and contributory infringement of Plaintiff's copyright, are jointly and severally liable for vicarious infringement of Plaintiff's copyright in Nagel's Documentary.

## COUNT FOUR
### Injunction
### (17 U.S.C. § 502)

45. Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 44 of the Complaint as though fully set forth herein.

46. Plaintiff requests a permanent injunction pursuant to 17 U.S.C. § 502(a) enjoining Defendants, their agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assignees, and all those in active concert and participation with Defendants, from directly or indirectly infringing on Plaintiff's copyright or continuing to market, offer, sell, dispose of, license, lease, transfer, publicly display, advertise, reproduce, develop, or manufacture any works derived or copied from Nagel's Documentary or to participate or assist in any such activity.

## COUNT FIVE
### Attorneys' Fees and Costs
### (17 U.S.C. § 505)

47. Plaintiff repeats and realleges the allegations

contained in Paragraphs 1 through 46 of the Complaint as though fully set forth herein.

48. Plaintiff requests its attorneys' fees and costs for the prosecution of this action.

WHEREFORE, Plaintiff demands judgement against Defendants as follows:

1. A declaration that Defendants have infringed Plaintiff's copyright in *Boy Scout's Honor*;

2. A declaration that such infringement is willful;

3. An accounting of all revenues earned by Defendants as a result of their reproduction display of *Boy Scout's Honor*;

4. An award of such actual damages and profits under 17 U.S.C. § 504(b) as the jury or Court shall deem proper, or at Plaintiff's election, an award of statutory damages as the Jury or Court shall deem proper, as provided in 17 U.S.C. § 504, including but not limited to damages for willful infringement;

5. An award of exemplary and punitive damages;

6. An award of Plaintiff's interest, including pre-judgement interest;

7. An award of all allowable statutory damages;

8. An award of attorneys' fees and costs;

9. A permanent injunction enjoining Defendants, their agents, officers, directors, attorneys, successors, affiliates,

subsidiaries, and assignees, and all those in active concert and participation with Defendants, from directly or indirectly infringing on Plaintiff's copyright or continuing to market, offer, sell, dispose of, license, lease, transfer, publicly display, advertise, reproduce, develop, or manufacture any works derived or copied from Nagel's Documentary or to participate or assist in any such activity; and

10. For such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury as to all matters so triable.

Dated: October 9, 2024            NAGEL RICE, LLP
                                  Attorneys for Plaintiff


                                  By:  *Bruce H. Nagel*
                                  Bruce H. Nagel
                                  103 Eisenhower Parkway
                                  Roseland, New Jersey 07068
                                  973-618-0400
                                  bnagel@nagelrice.com

# EXHIBIT A

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Shira Perlmutter*
United States Register of Copyrights and Director

**Registration Number**
**PA 2-377-218**
**Effective Date of Registration:**
September 18, 2022
**Registration Decision Date:**
October 28, 2022

## Title

**Title of Work:** Boy Scout's Honor

## Completion/Publication

**Year of Completion:** 2022
**Date of 1st Publication:** May 01, 2022
**Nation of 1st Publication:** United States

## Author

- **Author:** B. Nagel Films, LLC
  **Author Created:** entire motion picture
  **Work made for hire:** Yes
  **Citizen of:** United States
  **Domiciled in:** United States
  **Year Born:** 1952

## Copyright Claimant

**Copyright Claimant:** B. Nagel Films, LLC
103 Eisenhower Parkway, Roseland, NJ, 07068, United States

## Limitation of copyright claim

**Material excluded from this claim:** some preexisting footage

**New material included in claim:** all other cinematographic material

## Rights and Permissions

**Organization Name:** Gearhart Law, LLC
**Name:** David D Postolski
**Email:** david@gearhartlaw.com
**Telephone:** (908)273-0700

Page 1 of 2

**Address:** 41 River Road
Summit, NJ 07901 United States

## Certification

**Name:** David Postolski
**Date:** September 18, 2022

**Correspondence:** Yes