<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| B. NAGEL FILMS, LLC<br><br>*Plaintiff,*<br><br>v.<br><br>NETFLIX, INC. and LUMINANT MEDIA, INC.,<br><br>*Defendants.* | Case No. 24-9693<br><br>**<u>OPINION</u>**<br><br>June 2, 2026 |

**SEMPER,** District Judge.

**THIS MATTER** comes before the Court upon Defendants Netflix, Inc. and Luminant Media, Inc.'s (collectively, "Defendants") Motion to Dismiss Plaintiff B. Nagel Films, LLC's First Amended Complaint. (ECF 40, "Motion" or "Mot."; ECF 37, "FAC".) Plaintiff opposed the Motion. (ECF 46, "Opposition" or "Opp.") Defendants replied. (ECF 47, "Reply".) The Court has decided this Motion upon the submission of the parties, without oral argument, pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons stated below, Defendants' Motion to Dismiss is **GRANTED**.

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

The facts and procedural history described below are summarized from this Court's prior Opinion granting Defendant's motion to dismiss Plaintiff's initial Complaint on October 1, 2025.

---

[1] The facts and procedural history are drawn from the Complaint (ECF 1, "Compl.") and FAC (ECF 37). *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). For the purposes of a motion to dismiss, the facts drawn from the Complaint and FAC are accepted as true. *See Fowler v. UMPC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

(ECF 25, "Opinion" or "Op.")

On September 18, 2022, the United States Copyright Office issued a copyright registration for the documentary film *Boy Scout's Honor* to Plaintiff B. Nagel Films, LLC, the producer and creator of the film.   (Compl. ¶¶ 12-14; *see also* Compl. Ex. A.)  The film was released on streaming platforms including Apple, Amazon Prime Video, and Vudu on December 13, 2022, and "explored the instances of childhood sexual abuse in the [Boy Scouts of America] over decades."  (*Id*. ¶¶ 12, 15.) On September 6, 2023, Defendants' documentary, *Scout's Honor: The Secret Files of the Boy Scouts of America*, was released exclusively on Netflix's streaming platform.   (*Id*. ¶ 16.)  Defendants' documentary is also about childhood sexual abuse in the Boy Scouts of America (BSA).   (*Id*. ¶ 3.)

Plaintiff filed his initial Complaint on October 9, 2024.   Plaintiff alleged that "Defendants' documentary directly infringe[d] Plaintiff's copyright in Nagel's documentary as it copied several copyrightable portions and elements of Nagel's documentary without permission or authority[,]" including the "overarching theme and structure" and the "use of lighting, music, camera techniques, dialogue, and arrangement."   (*Id*. ¶¶ 18-22.)   More specifically, Plaintiff alleged that Defendants' film impermissibly copied his film's use of (1) the theme of exploring child sex abuse in the BSA over many decades; (2) expert and victim interviews; (3) graphic details of abuse; (4) the positive elements of scouting; (5) BSA's attempts to conceal the abuse; (6) historical documents; (7) musical accompaniment; (8) stock footage of camping and scouting activities; (9) lighting techniques; (10) emphasis on an individual victim; and (11) the portrayal of serial abusers. (*Id*. ¶¶ 20-21.)  Plaintiff also alleged that "Defendants had access to Nagel's documentary during the creation of Defendants' documentary as it was available to the public for almost 9 months prior to the release of

Defendants' documentary."   (*Id.* ¶ 17.)

Defendants filed their motion to dismiss Plaintiff's initial Complaint on December 30, 2024.  (*See generally* ECF 11, "First Motion to Dismiss" or "First Mot.")  This Court granted Defendants' motion, without prejudice, on October 1, 2025.  (Op.)  This Court held that as a matter of copyright law, Plaintiff could not prove Defendants' documentary was "substantially similar to warrant copyright protection."  (*Id.* at 6.)  Specifically, this Court found (1) the film is largely a work of facts, leaving anything related to the facts of the events the films describe, the people they interview, and the settings they deal with unprotected by copyright law; (2) many of the film's expressive elements (such as partial shadows, unnerving music, and stock footage of camping and scouting activities) fell into the unprotected category of *scènes à faire*; and (3) Plaintiff did not identify a sufficient similarity of language across the films' dialogue to trigger copyright protection.  (*Id.* at 6-7.)  The Court granted Plaintiff leave to amend.  (*Id.* at 7.)

Plaintiff filed the First Amended Complaint on October 31, 2025.  In addition to repeating the copying allegations from the initial Complaint, Plaintiff newly alleges that Defendants impermissibly copied its film's use of (1) abusers' threats to survivors' families; (2) survivors' struggles with hiding their abuse, questioning their sexuality, mental health and suicide, and not being believed by their communities; (3) journalist and attorney interviews; (4) discussion of BSA's Youth Protection Program, legal defenses, and bankruptcy; (5) dialogue commenting on the Boy Scouts' brand; (6) photographs of survivors as young boys in scouting uniforms to portray continued suffering; (7) patriotic imagery to explore connections between scouting and patriotism; (8) imagery of churches to explore connections between scouting and religion; and (9) imagery of newspaper coverage of the abuse scandal to

3

tell victims' stories.  (FAC ¶ 24; Opp. at 33-39.)  Plaintiff also newly alleges that both documentaries share a "sequence of events and pacing" and a "total concept and feel."  (FAC ¶ 24.)

As in the initial Complaint, Count One of Plaintiff's First Amended Complaint pleads direct copyright infringement under 17 U.S.C. § 106 and 17 U.S.C. § 501 *et seq.*  (*Id.* ¶¶ 31-36.) Count Two alleges contributory copyright infringement under 17 U.S.C. § 501.  (*Id.* ¶¶ 37-43.) Count Three alleged vicarious copyright infringement under 17 U.S.C. § 501 *et seq.*  (*Id.* ¶¶ 44-47.)    Count Four seeks permanent injunctive relief barring Defendants from infringing Plaintiff's copyright under 17 U.S.C. § 502.    (*Id.* ¶¶ 48-40.)    Count Five demands that Defendants cover Plaintiff's prosecution costs under 17 U.S.C. § 505. (*Id.* ¶¶ 50-51.)

Defendants filed the present Motion to Dismiss Plaintiff's First Amended Complaint on November 14, 2025. (Mot.)  Plaintiff opposed the Motion on December 1, 2025.   (Opp.) Defendants replied on December 5, 2025.   (Reply.)

## II.    LEGAL STANDARD

### A.  Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted[.]"    Fed. R. Civ. P. 12(b)(6).  To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."    *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more

than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted).   As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id*. at 789.

When ruling on a motion to dismiss, a court may consider not only the plaintiff's allegations, but also documents that are incorporated by reference, integral to, or explicitly relied on in the complaint.  *See, e.g.*, *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999).   In the copyright infringement context, courts may review the respective works at issue. *See, e.g., Tanksley v. Daniels*, 902 F.3d 165, 172 (3d Cir. 2018).   This Court has reviewed the works at issue.

In evaluating the sufficiency of a complaint, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).   The court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007).   If, after viewing the allegations in the complaint most favorably to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss the complaint for failure to state a claim.  *DeFazio v. Leading Edge Recovery Sols.*, No. 10-02945, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010).

### B.  Copyright Infringement

"To establish a claim of copyright infringement, a plaintiff must establish: (1) ownership of a valid copyright; and (2) unauthorized copying of original elements of the plaintiff's work." *Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 203 (3d Cir. 2005) (quoting *Dun & Bradstreet*

*Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 206 (3d Cir. 2002)). To prove unauthorized copying, a plaintiff must show that the defendant (1) had access to the plaintiff's work, and (2) that the "the original and allegedly infringing works share substantial similarities." *Id*. Critically, a plaintiff must be able to demonstrate to the Court that the substantial similarities are predicated on protectable elements of the original work. *Dam Things from Denmark, a/k/a Troll Co. ApS, v. Russ Berrie & Co., Inc.*, 290 F.3d 548, 562 (3d Cir. 2002).

Substantial similarity analysis involves two considerations: "(1) whether the defendant actually copied from the plaintiff's work and (2) whether the copying went so far as to constitute an improper appropriation." *Kay Berry Inc.*, 421 F.3d. at 208. In analyzing the first substantial similarity consideration—actual copying—courts consider "objective similarities in specific expressive elements, such as plot, themes, dialogue, mood, settings, pace and sequence of events in the two works." *Pino v. Viacom, Inc.*, No. 07–3313, 2008 WL 704386, at *4 (D.N.J. Mar. 4, 2008) (internal quotations and citations omitted). In assessing the second consideration, for instance, whether a "lay-observer would believe that the copying was of protectible aspects of the copyrighted work," courts may consider the "total concept and feel" of the two works. *See Dam Things from Denmark*, 290 F.3d at 562; *Tanksley*, 902 F.3d at 175; *Nicassio v. Viacom International, Inc.*, 776 F. App'x 761, 765 (3d Cir. 2019).

Finally, ideas and facts are not protectable elements of an original work. *Feist Publ'ns., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, at 349-350 (1991). Nor are *scènes à faire*, which are "incidents, characters or settings which are as a practical matter indispensable in the treatment of a given topic." *Whelan Assocs. Inc. v. Jaslow Dental Lab., Inc.*, 797 F.2d 1222, 1236 (3d Cir. 1986).

### III.    ANALYSIS

In their renewed Motion, Defendants argue that "[t]he handful of purported similarities" that

6

Plaintiff newly asserts rely "entirely either on uncopyrightable facts or *scènes à faire* …." (Mot. at 1.)  Plaintiff argues that its newly alleged similarities present sufficient facts to plausibly allege Defendants' film infringes *Boy Scouts Honor*.  (Opp. at 31.)  For the reasons described below, the Court finds that Plaintiff still fails to allege "enough facts to state a [copyright infringement] claim to relief that is plausible on its face," and which allow the Court to "draw the reasonable inference that [D]efendant[s] [are] liable for the misconduct alleged." *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678.

As a threshold matter, Defendants' assumption that they had access to Plaintiff's work does not impact this Court's analysis, as "even where access exists, a plaintiff's claim fails at the pleading stage where the works are not substantially similar as a matter of law."  *See, e.g.*, *Winstead v. Jackson*, No. 10-5783, 2011 WL4407450, at *2-3 (D.N.J. Sept. 20, 2011), *aff'd*, 509 F. App'x 139 (3d Cir. 2013) (finding no copyright infringement where defendants conceded they had access to the copyrighted work because there were no protected substantial similarities between the two works).

### A.  Plaintiff's Newly Alleged Similarities Are Uncopyrightable Facts

Plaintiff newly alleges that Defendants unlawfully copied its film's use of abusers' threats to survivors' families, survivors' struggles with hiding their abuse, questioning their sexuality, mental health and suicide, and not being believed by their communities, journalist and attorney interviews, and discussions of BSA's Youth Protection Program, legal defenses, and bankruptcy. (FAC ¶ 24; Opp. at 33-39.)  "Facts … are not afforded copyright protection," and, as a result, "nothing relating to the facts of the events that the films describe, the people they interview, and the settings they deal with can be protected by copyright law."  (Op. at 6); *Feist*, 499 U.S. at 349-350. These newly alleged similarities pertain to facts about the survivors' experiences, mental health and identity struggles, the BSA's Youth Protection Program, legal defenses, bankruptcy, and

interviews.  As such, they are uncopyrightable facts.  *See Pimentel v. A&E Network Support/Hist. Channel*, No. 17-cv-13573, 2018 WL 10579549, at *3 (D.N.J. May 18, 2018) (historical and factual items are not copyrightable because of the "public benefit in encouraging the development of historical and biographical works and their public distribution.")

### B.  Plaintiff's Newly Alleged Similarities Are Unprotected *Scènes à Faire*

Plaintiff also newly alleges that Defendants unlawfully copied its film's use of photographs of survivors as young boys to portray continued suffering, dialogue commenting on the Boy Scouts' brand, patriotic imagery to explore connections between scouting and patriotism, imagery of churches to explore connections between scouting and religion, and imagery of newspaper coverage of the abuse scandal to tell victims' stories.  (FAC ¶ 24; Opp. at 33-39.)

"*Scenes a faire* are 'incidents, characters or settings which are as a practical matter indispensable … in the treatment of a given topic."  *Whelan Assocs. Inc.*, 797 F.2d at 1236.  For example, as this Court recognized, expressive features such as "archival footage, commentary, and interviews" are "crucial to the creation of any historically accurate film" and are not afforded copyright protection.  (Op. at 6); *Bouchat v. Balt. Ravens Ltd.*, 737 F.3d 932, 944 (4th Cir. 2013). As such, dialogue commentary on the BSA, photographs of survivors as young boys, and imagery of newspaper coverage of the abuse are unprotected *scènes à faire.*  Further, "all situations and incidents which flow naturally from a basic plot premise, known as *scènes à faire*, are not entitled to copyright protection."  *Winstead*, 2011 WL4407450, at *2.  Thus, common themes of how patriotism and religion influence scouting, which flow naturally from the basic premise of a film about the culture and abuse within the BSA, are also unprotected *scènes à faire*.  *See id.* ("Any common themes of a young male whose tumultuous upbringing leads him to resort to a life of

crime and violence in order to gain power and money are *scenes a faire*, or standard to any coming of age story of a young man from an inner-city."); *see also Tanksley*, 902 F.3d at 175 (holding that "[i]n a film about a college fraternity, for example, 'parties, alcohol, co-eds, and wild behavior' would all be considered scènes à faire").

### C. Plaintiff Has Not Sufficiently Alleged That the Films Share a Substantially Similar "Sequence of Events and Pacing."

Plaintiff alleges that both documentaries share a "sequence of events and pacing" and a "total concept and feel." (FAC ¶ 24.) With respect to its allegations about the sequence of events and pacing, Plaintiff merely alleges that "[b]oth documentaries tell their stories by presenting interviews with sexual abuse survivors spliced with interviews with a journalist, attorneys, and others." (Opp. at 14.) But "[s]equences of events necessarily following from a common theme, or *scenes a faire*, do not establish substantial similarity." *Segal v. Paramount Pictures*, 841 F. Supp. 146, 149 (E.D. P.a. 1993). And here, as discussed, interviews are unprotected *scènes à faire*. (*See supra*; Op. at 6.) Thus, the films' shared use of interviews to establish a sequence of events does not establish substantial similarity. *See Segal*, 841 F. Supp. at 149.

### D. Plaintiff Has Not Sufficiently Alleged That the Films Share a "Total Concept and Feel."

Plaintiff alleges that both films utilize "a close up approach of abuse provided by survivors, while gaining context through interviews with others discussing the abuse scandal in broader context," and that Defendants' film copies Plaintiff's "selection of facts, arrangement, mood and theme choices, stylistic techniques, carefully selected dialogue, music selection, and other copyrightable elements …." (Opp. at 14.) First, this Court has already dismissed Plaintiff's allegation about the films' use of a close-up approach and interviews. (*See* Op.; Compl. ¶ 21; ECF 18, "First Opposition," at 35-36.) Second, with respect to dialogue, this Court also held that "[n]othing in the Complaint or the following briefs" apprised it of "the type of sustained, extended

9

similarity of language that trigger copyright protection." (Op. at 7.)  The First Amended Complaint fares no better—Plaintiff merely provides one new example of similar dialogue across the films. (FAC ¶ 24.)

Plaintiff finally alleges that Defendants' film copied his film's "selection of facts, arrangement, mood and theme choices, stylistic techniques, and music selection."  (Opp. at 14.) Plaintiff makes no new allegations with respect to the films' music selections and arrangements. (*See* Compl. ¶ 20-1; FAC ¶ 24.)  Plaintiff also does not articulate specific allegations about the films' allegedly similar styles.  (*See* FAC ¶ 24.)

This Circuit has held that, while "[t]here is obvious tension between the imperative to filter out unprotectable elements of a work while keeping sight of the work's total concept and feel," we should "reconcile these competing considerations by recalling that the basic inquiry remains whether an ordinary observer would perceive that the defendant has copied ***protected*** elements of the plaintiff's work." *Tanksley*, 902 F.3d at 175 (emphases added).  Plaintiff appears to articulate new allegations regarding the films' allegedly similar facts, mood, and theme.[2]  But, as discussed, Plaintiff's allegations fail because facts are uncopyrightable, and depictions of continued suffering through photographs, connections between scouting and patriotism, connections between scouting and religion, and imagery of newspaper coverage are unprotected *scènes à faire*.  (*See supra.*)  As such, this Court finds that Plaintiff has failed to plead sufficient

---

[2] As discussed, Plaintiff alleges Defendants' film copied his film's use of facts related to abusers' threats to survivors' families, survivors' struggles with hiding their abuse, questioning their sexuality, mental health and suicide, and not being believed by their communities, journalist and attorney interviews, and discussions of BSA's Youth Protection Program, legal defenses, and bankruptcy. (*See supra*; FAC ¶ 24; Opp. at 33-35.)  Plaintiff also appears to allege that Defendants' film copied his film's mood and themes such as victims' long-lasting suffering as depicted through photographs of survivors as young boys in scouting uniforms, the contrast of the BSA with the pervasive abuse through stock images of camping and scouting, the connections between scouting and patriotism, the connections between scouting and religion, and telling victims' stories via imagery of newspaper coverage of the abuse scandal.  (*See supra*; FAC ¶ 24; Opp. at 37-38.)

facts that would allow either a lay-person or the Court itself to infer that that Defendants have copied any *protected* element of its work.  *See Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678; *Tanksley*, 902 F.3d at 175; *see also Bruzzese v. Passages Int'l, Inc.*, No. 23-23047, 2025 WL 1778217, at *10-11 (D.N.J. June 27, 2025) (court leaving only an evaluation of the similarities between the "protectible elements" of two works to the factfinders); *Dellamorte, LLC v. Michaels Companies, Inc.*, No. 21-2029, 2022 WL 254427, at *4 (D.N.J. Jan. 27, 2022) ("After identifying the unprotected element of the work … the Court must now determine whether there is substantial similarity between the remaining, protectable portions of Plaintiff's work and the Defendant's [work]."; *Digital Dream Labs, LLC v. Living Tech. (Shenzhen) Co.*, 587 F. Supp. 3d 305, 316 (W.D. Pa. 2022) (evaluating the "total concept and feel" of two works after "filtering out the unprotectable elements").

## IV.    CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is **GRANTED**.  Plaintiff's First Amended Complaint is **DISMISSED** without prejudice.  Plaintiff has thirty days to amend its complaint pursuant to *Chemtech Int'l, Inc. v. Chem. Injection Techs., Inc.*, 170 F. App'x 805, 810-11 (3d Cir. 2006).  An appropriate order follows.

*/s/ Jamel K. Semper*
**Hon. Jamel K. Semper**
**United States District Judge**

Orig:    Clerk
cc:    Michael A. Hammer,
        USMJ Parties